No. 24-3291

―――――――――――――

# IN THE UNITED STATES COURT OF APPEALS FOR THE SIXTH CIRCUIT

―――――――――――――

MICHAEL GRASSI *et al.*,

Plaintiffs-Appellees,

v.

JOHN GRASSI *et al.*,

Defendants-Appellants.

―――――――――――――

**On Appeal from the United States District Court for the Northern District of Ohio, Case No. 1:18-CV-2619-PAB**

―――――――――――――

## PLAINTIFFS'-APPELLEES' OPPOSITION TO DEFENDANTS'-APPELLANTS' EMERGENCY MOTION FOR STAY AND INJUNCTION PENDING APPEAL

―――――――――――――

Michael B. Pasternak
THE LAW OFFICE OF MICHAEL PASTERNAK
3681 South Green Road, Suite 411
Beachwood, Ohio  44122
(216) 360-8500
mpasternak1@msn.com

Jeffrey Saks
THE SAKS LAW OFFICE LLC
3681 South Green Road, Suite 411
Beachwood, Ohio  44122
(216) 255-9696
jsaks@sakslawoffice.com

Emmett E. Robinson
ROBINSON LAW FIRM LLC
6600 Lorain Avenue #731
Cleveland, Ohio  44102
(216) 505-6900
erobinson@robinsonlegal.org

*Attorneys for Plaintiffs-Appellees*
*Michael Grassi and CFOM, Inc.*

The Emergency Motion for Stay and Injunction Pending Appeal filed by
Defendants-Appellants John Grassi and Alotech Limited, LLC should be denied.
This motion represents the third time in the past month that Defendants have
sought to deprive Plaintiffs of the return of devices that Plaintiffs voluntarily
provided to the forensic examiner, all while Defendants adamantly refuse to
comply with their settlement payment obligations. Defendants' previous attempts
have been denied. Their present attempt is no more meritorious, and also should
be denied. Further, Plaintiffs moved to dismiss Defendants' appeal because it is
from non-final, non-appealable interlocutory orders.

Defendants fail to acknowledge that this Court reviews a district court's
denial of a motion for a stay under an abuse-of-discretion standard. Defendants'
motion, pursuant to Fed. R. App. P. 8(a)(2), seeks the same relief and for the same
reasons as their motion for stay under Fed. R. Civ. P. 62(d), which the trial court
denied on April 17, 2024.

Defendants' recitation of the facts and the posture of the case is inconsistent
with the lengthy record developed below and with the factual findings of the trial
court. Defendants state that "[t]his is a trade secrets case" (Motion at 1), and then
argue that their "trade secrets" need to be protected via a stay and injunction. This
is incorrect. First, Defendants never raised *any* trade secrets claim in this case.
Ironically, only *Plaintiffs* raised a claim for misappropriation of trade secrets by

*Defendants*.  Second, as the trial court explicitly found, there has been no finding

that of the devices to be returned to Plaintiffs contains *any* property of Defendants,

let alone "trade secrets."   (RE 322 at PageID# 6840.)

Third, Defendants fail to inform this Court that all of the devices in EY's

possession are there only because Plaintiffs voluntarily and by agreement delivered

them to EY for purposes of a forensic review to facilitate effectuating the parties'

Term Sheet.  The Term Sheet called for Plaintiffs to turn over defined materials to

Defendants in exchange for money.  The Term Sheet did not call for turning of

anything to *any* third party, let alone specifically EY.  The main device at issue – a

Dell M6800 laptop – was purchased by Plaintiffs in 2014.  After Plaintiffs stopped

working with Defendants in July 2017, Michael Grassi took his laptop with him.

Defendants never made any claim that the laptop contained their "property," let

alone "trade secrets."  Defendants never sought the return of this laptop, even in

their counterclaims in this case.  For *more than five years*, Plaintiffs had this

laptop, and Defendants never made any claim related to it.  Between July 2017 and

December 2022, Defendants made zero efforts to retrieve this laptop and they

similarly took no steps to preclude Plaintiffs' use of any technology, let alone their

supposed "trade secrets."

Fourth, in the sixteen months that have passed since the Term Sheet was

signed, Defendants have argued that they needed the return of two "crown jewel"

databases, which they alleged were on the Dell M6800 laptop (notwithstanding their years of inaction). As the trial court explicitly found (and as Defendants have conceded (RE 284 at PageID# 6396)), the forensic examination has revealed that, without question, those "databases" are not on the laptop. (4/19/2024 Order, RE 322, at PageID# 6840 ("the devices to not contain Defendants' two 'crown jewel' databases").) Thus, Defendants' main justification for needing a stay and injunction is a mirage. Defendants simply desire to improperly deprive Plaintiffs of devices that Plaintiffs had voluntarily, and temporarily, provided to EY.

As the trial court correctly held, Defendants fail to satisfy the factors to be granted a stay. They have not demonstrated that their appeal is likely to succeed, nor have they shown the requisite irreparable injury. Defendants' motion is no more meritorious now than it was a few days ago in the trial court. It should be denied.[1]

---

[1] On April 18, 2024, Plaintiffs filed a motion to dismiss Defendants' appeal, because the two trial court orders from which they appeal are not final, appealable orders. Subject matter jurisdiction is a "threshold matter" that must be decided first before addressing the merits or any other issues in this appeal. *Miami Valley Fair Hous. Ctr., Inc. v. Steiner & Assocs.*, 483 F. App'x 67, 70 (6th Cir. 2012). Thus, this Court must first determine whether it has jurisdiction over Defendants' appeal before ruling on their motion for a stay. *E.g., Homes v. United State*s, Case No. 21-3715, 2021 U.S. App. LEXIS 24552, at *4 (6th Cir. Aug. 17, 2021) (dismissing appeal for lack of jurisdiction, denying motion to stay as moot).

## Relevant Facts and Procedural History

This lawsuit involves a business dispute between twin brothers and their respective companies. This Court has seen the case once before. *See Grassi v. Grassi*, Case No. 20-3358, 2021 U.S. App. LEXIS 23181 (6th Cir. Aug. 3, 2021). The brothers "spent several years working together to develop a manufacturing technology called ablation casting," which they licensed. *Id.* at *1. Their dispute over "what role [Plaintiffs] played in the development process, and what payment [they] may be owed" led to this lawsuit. *Id.* The case was tried before a jury in March 2020. The jury returned a verdict for Defendants, but this Court affirmed in part, reversed in part, and remanded for a new trial. *Id.* at *2.

On December 5, 2022, the day the second trial was scheduled to begin, the parties reached a settlement and executed a Term Sheet. (Minutes of Proceedings, RE 176.) The Term Sheet called for Defendants to return property to Plaintiffs along with a payment, and in exchange Plaintiffs were to provide Defendants certain defined materials. The Term Sheet also included provisions regarding use of certain jointly developed technology. The trial court subsequently dismissed the case with prejudice, retaining jurisdiction to enforce the settlement. (Order of Dismissal, RE 178.)

A dispute arose between the parties, and each side filed a motion to enforce the Term Sheet in January 2023. On February 10, 2023, the Court began a hearing

on the motions, which was adjourned when the parties agreed to engage in a forensic examination process to determine whether any "Alotech property" as defined under the Term Sheet was on Plaintiffs' Dell M6800 laptop and to facilitate the exchange of any materials to Defendants. (Minute Order, RE 207 at PageID# 5306-5307.) The Court ordered a forensic examination of the Dell M6800 laptop and other devices (*id.*), which Plaintiffs provided to the forensic examiner.

Shortly after the February 10 hearing, Defendants changed their entire legal team and strategy. No longer simply trying to execute the Term Sheet, Defendants now claimed that they would only pay Plaintiffs if they received two "crown jewel" databases, despite the fact that there was no mention of *any* database in the underlying litigation or the Term Sheet. Further, the forensic review revealed no such databases were on the Dell M6800 laptop as of December 5, 2022. (4/19/2024 Order, RE 322, at PageID# 6840.) Defendants requested that EY provide the parties with certain reports and information, which the Court granted. (Defs.' Status Report, RE 245 at PageID# 5875-5876; 7/21/2023 Order.) Defendants represented that once they received this information, "the forensic review will be able to be wrapped up in short order and the limited amount of Alotech's data . . . can finally be returned to Alotech pursuant to the settlement." (RE 245 at PageID# 5877.) But Defendants did not follow the path they

articulated.  When the trial court ordered the parties to submit reports on the status

of the investigation by October 2, 2023, Defendants instead moved that court for

an order that would: (1) allow them not to pay Plaintiffs under the Term Sheet; (2)

permanently enjoin Plaintiffs from conduct well outside the parameters of the

Term Sheet; (3) allow Defendants keep all of Plaintiffs' devices provided to EY;

and, (4) require Plaintiffs to pay damages for the nonexistent databases.  (Proposed

Order attached to Defs.' Renewed Motion to Enforce, RE 275-4.)[2]

On October 5, 2023, the trial court issued an Order recognizing that the

forensic examination revealed that the two databases that Defendants "call the

'crown jewels' . . . are not on the devices that were in Plaintiffs' possession."

(10/5/2023 Order, RE 279 at PageID# 6350 n.2.)  The court also noted that "the

forensic examination revealed '41,000 files . . . that contain either "Alotech" or

"ablation" in the file name/file path,'" but just because a word appears in a

document or a file name does not by itself mean that these files are "Alotech

property."  (Id. at PageID# 6349.)  The court also rightly observed that, while it

had the power to enforce the Term Sheet, it lacked the power to modify it, and thus

Defendants' request for a permanent injunction had to be denied.  (Id. at PageID#

6351-6352.)  The court held that it lacked jurisdiction to entertain an injunction

---

[2] Various filings cited herein were filed under seal with unredacted copies served
by counsel, and thus PageID# identifiers are not available.

that sought relief beyond the Term Sheet and provided options for a path forward.
(*Id.* at PageID# 6352-53.)

On January 8, 2024, the parties submitted a joint status report as directed by
the court. (RE 292.) Plaintiffs sought relief under Rule 60(b)(6) to vacate the
Term Sheet in light of Defendants' unwillingness to abide by its terms. (*Id.*) On
March 8, 2024, the trial court issued an order granting in part Defendants' renewed
motion to enforce and denying Plaintiffs' Rule 60(b)(6) request. (3/8/2024 Order,
RE 301-1.) The court cited the relevant Term Sheet language and held that it
contained a series of conditions precedent, that those conditions had not been
fulfilled, that the failure to fulfill the did not evidence a breach, and that it was
premature to determine whether there had been any breach. (*Id.* at PageID# 6615-
18.) The court further held that Plaintiffs only agreed to return Defendants'
"property" and disclaim ownership in exchange for Defendants paying the
settlement amount. (*Id.* at PageID# 6617-18.)

The trial court made clear that the process in which the parties were engaged
was not over, and that further steps needed to be taken. The court held that, going
forward, Plaintiffs could forensically examine the 41,000 files independently "to
determine which, if any, are Alotech property. If none are Alotech's, Plaintiffs
could provide such proof to Defendants and, presumably, demand payment. If any

are Alotech's, Plaintiffs could return those files to Defendants and, presumably, demand payment." (*Id*. at PageID# 6618-19.)

On March 12, 2024, Defendants moved the trial court for emergency injunctive relief. (RE 303.) Defendants requested that Plaintiffs not be allowed to take possession of "Alotech property," that there be a 30-day stay to evaluate the court's order, and that EY should maintain copies of the devices and data. (*Id*. at PageID# 6639.) In their proposed order (but excluded from the motion itself), Defendants also asked for the court to order that all of the devices be "returned" to Defendants. (RE 303-2 at PageID# 6651-6652.)

On March 19, 2024, the trial court issued an order granting Defendants' emergency motion in part. (3/19/2024 Order, RE 309.) The court denied Defendants' request to enjoin Plaintiffs from receiving the devices (Plaintiffs' own property) in the possession of EY, and to require that these devices be given to Defendants, because, among other things, there had been no determination that there was any "Alotech property" on the devices. (*Id*. at PageID# 6712-13.) The court granted Defendants' request that EY maintain copies and granted Defendants' request for a 30-day stay. (*Id*. at PageID# 6713-14.) On April 5, 2024, Defendants filed a notice of appeal of both the trial court's March 8 and March 19 orders. (RE 311.)

On April 9, 2024, Defendants filed their motion to stay enforcement of the March 19 order pending appeal. (RE 314.) On April 17, 2024, the trial court denied Defendants' motion to stay, holding that Defendants had not shown "serious questions going to the merits" because the issue about which they are complaining – having EY return to Plaintiffs the devices that Plaintiffs voluntarily provided to EY to review – was not in the Term Sheet. (4/17/2024 Order, RE 322 at PageID# 6839-39.) The court also rejected Defendants' argument that the Term Sheet was "predicated on the immediate return of all of Alotech's property" because Defendants waived the "fixed date" for return mentioned in the Term Sheet. (*Id.* at PageID# 6839.) The court also was aware of Defendants' years of delay in ever asserting any right or interest in the Dell M6800 laptop or any files or data on it, which further undercut their claim of potential success on the merits. (*Id.* at PageID# 6840-41.)

The trial court also correctly held that Defendants cannot demonstrate irreparable injury for several reasons. The trial court noted Defendants' years of inaction regarding the supposedly critical information that they now claim is on the Dell M6800 laptop. (*Id.* at PageID# 6840-41.) The court also noted that there is no evidence that any of the devices in EY's possession contain Defendants' "trade secrets," and further that it has been established that the Dell M6800 laptop does not contain the "crown jewel databases." (*Id.* at PageID# 6840.) The court further

found that Defendants' concerns about what might happen to their "property" is meritless, because, at their insistence, the trial court ordered that EY create and maintain copies of the devices, which it has done. (*Id.* at PageID# 6841.) Defendants have now recycled their motion to stay, seeking relief from this Court.

### Law and Argument

The trial court, which has had this case since October 2018 and knows the record, considered and denied Defendants' motion for stay under Fed. R. Civ. P. 62(d). In now moving this Court for the same stay under Fed. R. App. P. 8(a)(2), Defendants are essentially seeking reversal of the trial court's ruling. "We review the district court's denial of the motion to stay under Rule 62 for an abuse of discretion." *NCUA Bd. v. Zovko*, Case Nos. 17-3716/3750, 2017 U.S. App. LEXIS 20007, at *3 (6th Cir. Oct. 12, 2017) (citations omitted). *See also Summit Cty. Democratic Cent. & Exec. Comm. v. Blackwell*, 388 F.3d 547, 553 (6th Cir. 2004).

The factors relevant in evaluating a motion to stay under Fed. R. Civ. P. 62 and Fed. R. App. P. 8 are the same factors for evaluating a request for injunctive relief. The trial court considered all of these factors in ruling on Defendants' emergency motion for injunctive relief (RE 309), one of the two orders from which Defendants have (improperly) appealed. And the trial court considered those same factors in denying Defendants' motion for stay. (RE 322.) This Court reviews "a challenge to the grant or denial of injunctive relief under an abuse of discretion

standard and afford[s] great deference to the decision of the district court."

*Felder's Auto Body & Frame Shop, Inc. v. Conely*, 113 F. App'x 68, 69-70 (6th

Cir. 2004). "The district court's determination will be disturbed only if the district

court relied upon clearly erroneous findings of fact, improperly applied the

governing law, or used an erroneous legal standard." *Id.* at 70.

### A. Defendants do not meet the standard for entry of a stay under Fed. R. App. P. 8(a)(2).

Defendants' motion should be denied because they do not meet the

necessary factors. The factors are to be balanced, but "in order to justify a stay of

the district court's ruling, the defendant must demonstrate serious questions going

to the merits and irreparable harm that decidedly outweighs the harm that will be

inflicted on others if a stay is granted." *Baker v. Adams County/Ohio Valley Sch.

Bd.*, 310 F.3d 927, 928 (6th Cir. 2002) (citation omitted).

As this Court held in *Michigan Coalition of Radioactive Material Users,

Inc. v. Griepentrog*, 945 F.2d 150, 153 (6th Cir. 1991), "[a]lthough the factors to

be considered are the same for both a preliminary injunction and a stay pending

appeal, the balancing process is not identical due to the different procedural

posture in which each judicial determination arises." This Court went on to

explain that a trial court ruling on a motion for a preliminary injunction "must

make a decision based upon 'incomplete factual findings and legal research.' . . .

Conversely, a motion for a stay pending appeal is generally made after the district

court has considered fully the merits of the underlying action and issued a

judgment, using following completion of discovery." *Id.* "As a result, a movant

seeking a stay pending review on the merits of a district court's judgment will have

greater difficulty demonstrating a likelihood of success on the merits. In essence, a

party seeking a stay must ordinarily demonstrate to a reviewing court that there is a

likelihood of reversal." *Id.*

      1.    <u>Defendants have not shown a likelihood of success on the merits.</u>

     Ordinarily, a party moving for a stay must show a likelihood of success on

the merits. If a party can demonstrate significant irreparable injury, then it "may

only be required to show 'serious questions going to the merits' in order to

overcome" the first factor. *American Standard, Inc. v. Meehan*, 614 F.Supp.2d

844, 847 (N.D. Ohio 2007). Defendants are not permitted to avail themselves of

the lower "serious questions" standard because they have no basis to claim any

irreparable injury. But even were the lower standard applicable, Defendants still

are required to "raise serious questions going to the merits that are not 'a mere

repetition of arguments previously considered and rejected.'" *Id. See also Ohio ex*

*rel. Celebrezze v. Nuclear Regulatory Comm'n*, 812 F.2d 288, 290 (6th Cir. 1987).

Defendants cannot satisfy either standard.

     The trial court's orders interpreting the Term Sheet were correct. The Term

Sheet contains a series of conditions precedent, and there has as of yet been no

finding of breach. Contrary to Defendants' argument that the court's holding was in error, they previously agreed that the Term Sheet contains various conditions precedent. (Defs.' Motion to Enforce, RE 182 at 3, 7, 9; Defs.' Combined Opposition and Reply, RE 189 at 13.) Defendants even cited to *Transtar Elec v. A.E.M. Elec. Servs. Corp.*, 140 Ohio St.3d 193, 199, 16 N.E.3d 645, 650 (Ohio 2014), upon which the trial court also relied, for the proposition that a condition precedent is "a condition that must be performed before obligations in a contract become effective." (RE 189 at 13; 10/5/2023 Order, RE 279 at PageID# 6350.)

Defendants also falsely argue that they have a claim for "trade secrets" in this case, that their "trade secrets" are on the Dell M6800 laptop, and that they will be harmed if the "trade secrets" are not immediately returned to them. (Motion at 3-4.) They go so far as to argue that "there is no dispute that under the Term Sheet, the Trade Secrets are Alotech's." (*Id.* at 6.) This is all incorrect, as the trial court acknowledged: "[w]hether that data is Defendants' property has not yet been determined." (4/17/2024 Order, RE 322 at PageID# 6839.) Defendants have no trade secrets claim, and they never made any claim regarding the Dell M6800 laptop. Further, the "crown jewel" databases are conclusively not on that laptop. In short, the trial court correctly held that, to date, there has been no determination that any of the files or data on the laptop are "Alotech property" under the Term Sheet. "Whether these files contain Defendants' trade secrets at all – or even if

they are Defendants' property at all – is still to be determined." (*Id.* at PageID# 6840.)[3]

Defendants also inaccurately argue that it is not disputed that "the Trade Secrets are Alotech's and not Appellees'," claiming to cite to the Term Sheet. (Motion at 1.) In fact, they are citing to an October 2012 work product agreement that was attached to the Term Sheet, which Plaintiffs have long contended contains a forged signature. The parties agreed to both be able to use their jointly developed technology, as defined in the Term Sheet. Even more fundamentally, any restrictions in the Term Sheet to be placed upon Plaintiffs can only occur once Defendants fulfill their payment obligation. As the trial court stated, Defendants recognized and conceded that the Term Sheet contains a set of conditional promises.

Defendants also inaccurately make multiple unsupported allegations of supposed wrongdoing on the part of Plaintiffs, including that Plaintiffs "deleted substantial portions of Alotech's Trade Secrets." (Motion at 3.) In truth, Michael Grassi explained that shortly after December 5, 2022, he tried to power up the

---

[3] The trial court made clear that the parties still need to take several additional steps before it can determine whether Plaintiffs possess any "Alotech property" under the Term Sheet (3/8/2024 Order, RE 301-1, at PageID# 6618-19; 4/17/2024 Order, RE 322 at PageID# 6840), which shows the trial court's March 8 and March 19 orders are not final and are not presently appealable, as Plaintiffs explained in their motion to dismiss this appeal.

laptop to determine its serial number and the old laptop experienced problems. He made a virtual image of the laptop, but because its memory capacity was full, a small amount of junk files were deleted to clear the necessary space to make the virtual image. The laptop continued to fail, but the contents of the Dell M6800 laptop as of early December 2022 were saved and are on the virtual image. (RE 215 at PageID# 5431-33, 5443-43, 5500-02.)

Plaintiffs had the Dell M6800 laptop and other devices in their possession in February 2023. They were voluntarily provided to EY to conduct an agreed-upon forensic examination, which has concluded. Defendants have no greater right to possess these devices today than they did when the Term Sheet was signed, or in the spring of 2023, when they were in Plaintiffs' possession and then delivered to EY. As the trial court correctly held, "[r]eturning the devices to Plaintiffs thus merely returns the parties to the positions they were in when they agreed to the Term Sheet." (4/17/2024 Order, RE 322 at PageID# 6839.) Defendants have failed to demonstrate any likelihood of success on the merits.

    2.   <u>Defendants cannot demonstrate irreparable injury.</u>

Defendants have failed to demonstrate any injury, let alone an irreparable one. Defendants' motion claims that there are valuable "trade secrets" on these devices, and that if they are not "returned" to Defendants, they will suffer

irreparable harm. (Motion at 13.) They also argue that the trial court erred in "misreading [] the evidence" regarding irreparable harm. (*Id.* at 15.)

As the trial court was well aware, Defendants took no action regarding any devices or data in Plaintiffs' possession for many years. Michael Grassi ceased working with Defendants in July 2017. At the time, he took his laptop – which he bought and paid for – with him. Throughout the rest of 2017 and all of 2018, Defendants never took any action to recover this laptop. When Plaintiffs filed their lawsuit in late 2018, Defendants filed counterclaims for conversion and breach of contract, alleging that Michael Grassi took "a computer and several external hard drives" (Defs.' Amended Answer and Counterclaim, RE 8, ¶¶ 89-101), but those counterclaims involved a different computer, not Plaintiffs' Dell M6800 laptop. Further, even as relates to the counterclaim that Defendants did raise, they never asked for the return of anything or sought injunctive relief. And even then, prior to the first trial of this case, in March 2020, Defendants *voluntarily dismissed* their claims for conversion and breach of contract, forever extinguishing them. (*See* Defs.' Trial Brief, RE 42, at pages 8-9; 3/9-10/2020 Trial Tr., RE 65, at pages 11-12.) During the years since the first trial, Defendants continued to raise no issues or claims regarding any of their "property," let alone regarding the Dell M6800 laptop. As the trial court correctly held, due to Defendants' inaction and delay, their "alleged harm is not immediate either." (ECF Doc. 322, at PageID# 6841.)

16

A party's "delay in seeking a preliminary injunction undermines their allegations of irreparable harm." *Guar. Residential Lending, Inc. v. Homestead Mortg. Co., LLC*, Case No. 04-74842, 2005 U.S. Dist. LEXIS 43640, at *21-*22 (E.D. Mich. Dec. 13, 2005) (citation omitted). "A presumption of irreparable injury may be defeated . . . when a party has delayed in seeking injunctive relief. The failure to act sooner undercuts the sense of urgency that ordinarily accompanies a motion for preliminary relief and suggests that there is, in fact, no irreparable injury." *Id.* at *22 (citing *Weight Watchers Int'l, Inc. v. Luigino's, Inc.*, 423 F.3d 137, 144 (2d Cir. 2005)). "[N]umerous courts have recognized that any presumption of irreparable injury resulting from a court's finding that the plaintiff can show a substantial likelihood of success on the merits is rebutted by a delay of even a few months in seeking preliminary injunctive relief." *Vita-Mix Corp. v. Tristar Prods.*, Case No. 1:07 CV 275, 2008 U.S. Dist. LEXIS 143319, at *26-*27 (N.D. Ohio Sept. 30, 2008) (holding even if a party can show a likelihood of success "and a presumption of irreparable harm arises, . . . Plaintiff's eleven-month delay in seeking the extraordinary remedy of injunctive relief undermines its belated assertion of irreparable harm on these claims.").

In addition to their lengthy delay, Defendants' decision to dismiss their counterclaims for breach of contract and conversion further dooms any claim of irreparable injury. *Wilson Sporting Goods Co. v. Head Sports, Inc.*, Case No. 98 C

1314, 1999 U.S. Dist. LEXIS 1614, at *11 (N.D. Ill. Feb. 8, 1999) (holding that party did not show irreparable injury when it had previously "voluntarily relinquish[ed] its market exclusivity" by licensing the patent to a competitor).

The trial court correctly held that because the "crown jewel databases" are definitively not on the Dell M6800 laptop, and because whether any of the files on the laptop contain any of Defendants' "property . . . is still to be determined," that "Defendants' alleged harm is not certain." (ECF 322 at PageID# 6840.) The court also held that, due to Defendants' delay and inaction over a period of years, "Defendants' alleged harm is not immediate either." (*Id.* at PageID# 6840-6841.) Further, EY has a copy of the very devices and files Defendants seek, which further negates any finding of irreparable injury. (*Id.* at PageID# 6841.) The return of these devices to Plaintiffs causes no harm at all to Defendants.

Defendants' motion avoids all of this dispositive evidence, which the trial court correctly considered. Instead, Defendants continue their various false attacks on Plaintiffs, and misrepresent the facts surrounding the reason why the virtual copy of the Dell M6800 laptop was created. A party seeking the extraordinary remedy of an "emergency" appellate stay should be punctilious with the facts, not play fast and loose with them.

3.   <u>The remaining factors do not entitle Defendants to a stay</u>.

Because the first two factors are the most critical and weigh so heavily in

Plaintiffs' favor here, the final two factors need not be discussed in great detail,

thought they also weigh against Defendants.  Plaintiffs want to take steps to

effectuate the Term Sheet pursuant to the trial court's directions in its March 8

order and will be harmed by an unnecessary delay.  Moreover, in addition to the

Dell M6800 laptop, Plaintiffs are being deprived of various other devices that they

gave to EY, including Michael Grassi's personal cell phone and email account.

Further, EY desires to immediately comply with the trial court's order and be rid of

its involvement in the parties' dispute.  (RE 310 at PageID# 6716-17; RE 310-1 at

PageID# 6719-20.)  On the final factor, Defendants argue about "discouraging

unfair trade practices" and "misappropriation of trade secrets" (Motion at 15), but

those arguments have nothing to do with this case.  Defendants never raised any

such claims, and they had years to do so.  Defendants also argue about upholding

settlements (*id*. at 15-16), which is what the trial court has done through its March

8 order.  Defendants are preventing the continuation of that  process through their

improper appeal and stay request.

**B.   If granted a stay, Defendants should be required to post a bond.**

Fed. R. App. P. 8(a)(2)(E) provides that the "court may condition relief on a

party's filing a bond or other security with the district court."  When a party moves

for a stay of execution pending appeal, "[t]rial courts have discretion to determine whether to require the bond.  The Sixth Circuit has not specified which factors a district court should consider.  Nevertheless, district courts generally require a full supersedeas bond unless the appellant has demonstrated 'the existence of extraordinary circumstances.'"  *Ra v. Orange Vill.*, Case No. 1:15-CV-2416, 2017 U.S. Dist. LEXIS 68272, at *9 (N.D. Ohio May 4, 2017) (citations omitted).[4]

While the trial court's March 8 and March 19 orders did not involve an award to Plaintiffs, a bond should be required if the Court grants Defendants' motion to stay.  Defendants have objected to placing the payment amount called for in the Term Sheet (or even a portion of it) into escrow with the trial court, despite their representations in January 2023 that they were willing to do so.  (Mot. to Enforce, RE 179-1 at 10.)  Defendants have provided no evidence regarding their ability to pay.  Absent Defendants posting a bond, Plaintiffs have no

---

[4] Appellants "must also demonstrate that, in the absence of standard security, the opposing party will be properly secured against the risk that the [Appellants] will be less able to satisfy the judgment subsequent to its disposition of the post-trial motions.  'If the Court finds that the [Appellants'] ability to satisfy its obligations now or in the future is uncertain, then it should not grant an unsecured stay.'"  *Id.* (citing *Lincoln Elec. Co. v. MPM Techs.*, Inc., Case No. 1:08-CV-2853, 2009 U.S. Dist. LEXIS 966907, at *4 (N.D. Ohio Oct. 6, 2009)).  "In most cases where courts have agreed to waive a supersedeas bond, they did so because 'an appellant claims its ability to pay the judgment is so obvious that posting a bond would simply be a waste of money.'"  *Physicians Ins. Capital, LLC v. Praesidium Alliance Group, LLC*, Case No. 4:12CV1789, 2013 U.S. Dist. LEXIS 132177, at *8 (N.D. Ohio Sept. 16, 2013) (citation omitted).

assurance of Defendants' ability to pay.  Further, Plaintiffs have been harmed by being deprived of their devices (including Michael Grassi's cell phone) and Gmail account access, which harm will continue during the pendency of Defendants' efforts to delay the effects of the trail court's orders.  This Court should set the bond at the full settlement amount that Defendants are to pay under the Term Sheet in exchange for "return" of their purported "property."[5]

### Conclusion

For the foregoing reasons, Plaintiffs-Appellees respectfully request that Defendants' Emergency Motion for Stay and Injunction Pending Appeal be denied.

April 19, 2024                                    Respectfully submitted,

                                    _/s/ Jeffrey Saks_____
                                    Michael B. Pasternak
                                    E-mail:  *Mpasternak1@msn.com*
                                    The Law Office of Michael Pasternak
                                    3681 South Green Road, Suite 411
                                    Beachwood, Ohio 44122
                                    Telephone: (216) 360-8500
                                    Facsimile:  (216) 360-8501

                                    Jeffrey Saks
                                    E-mail: jsaks@sakslawoffice.com
                                    The Saks Law Office, LLC
                                    3681 South Green Road, Suite 411
                                    Beachwood, Ohio 44122
                                    Telephone: (216) 255-9696

---

[5] Plaintiffs are not including the dollar amount because the Term Sheet is confidential.  Defendants have submitted the Term Sheet under seal with their motion.

Emmett E. Robinson
E-mail: *erobinson@robinsonlegal.org*
ROBINSON LAW FIRM LLC
6600 Lorain Avenue #731
Cleveland, OH 44102
(216) 505-6900

*Counsel for Plaintiffs-Appellees*
*Michael Grassi and CFOM, Inc.*

## Certificate of Compliance With Type-Volume Limit

1. This document complies with the type-volume limit of Fed. R. App. P. 27(d)(2)(A) because, excluding the portions of this filing that are exempted under Fed. R. App. P. 32(f), this document contains 5,144 words.

2.     This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman.

> */s/ Jeffrey Saks*
> Jeffrey Saks
>
> *Attorney for Plaintiffs-Appellees*
> *Michael Grassi and CFOM, Inc.*

## Certificate of Service

I hereby certify that on April 19, 2024, a copy of the foregoing was filed electronically with the Clerk of Courts through its electronic filing system. All counsel of record for the parties will receive notice of this filing and can access the filing by operation of the Court's electronic filing system.

> */s/ Jeffrey Saks*
> Jeffrey Saks
>
> *Attorney for Plaintiffs-Appellees*
> *Michael Grassi and CFOM, Inc.*